UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNIE ROGERS, | ) Case No. EDCV 09-584 JC |
| Plaintiff, | ) |
| v. | ) MEMORANDUM OPINION |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

**I. SUMMARY**

On March 31, 2009, plaintiff Ernie Rogers ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have filed a consent to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; May 1, 2009 Case Management Order ¶ 5.

///

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED. The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.[1]

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On November 14, 2006, plaintiff filed an application for Supplemental Security Income benefits. (Administrative Record ("AR") 12). Plaintiff asserted that he became disabled on or about September 4, 2005, apparently due to depression. (AR 72-79). The ALJ examined the medical record and heard testimony from a medical expert, a vocational expert, and plaintiff (who was represented by counsel) on October 23, 2008. (AR 12, 14, 191-214).

On January 22, 2009, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 12-21). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: depression and marijuana abuse (AR 14); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal one of the listed impairments (AR 14-15); (3) plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels with certain nonexertional limitations (AR 15);[2] (4) plaintiff had no past relevant work (AR 19); and (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform (AR 19).

The Appeals Council denied plaintiff's application for review. (AR 4-6).

---

[1] The harmless error rule applies to the review of administrative decisions regarding disability. See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196 (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of application of harmless error standard in social security cases).

[2] Specifically, the ALJ determined that plaintiff (i) should work in a non-public setting; (ii) could do simple repetitive tasks; (iii) was limited to occasional non-intense contact with others; (iv) should work in an environment with no hypervigilance; and (v) "should not have a job that requires no [sic] safety operations." (AR 15).

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit his ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

(4) Does the claimant possess the residual functional capacity to perform his past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

(5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow him to adjust to other work that exists in

1    significant numbers in the national economy? If so, the
2    claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

**B.    Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

///
///
///

## IV. DISCUSSION

### A. The ALJ Properly Evaluated the Medical Opinion Evidence

Plaintiff contends that the ALJ improperly rejected the opinions of Dr. Reynaldo Abejuela, an examining psychiatrist, expressed in the report of a complete psychiatric evaluation dated December 20, 2006 (AR 19, 101-07).[3] (Plaintiff's Motion at 2-3).  The Court disagrees.

#### 1. Pertinent Law

In Social Security cases, courts employ a hierarchy of deference to medical opinions depending on the nature of the services provided.  Courts distinguish among the opinions of three types of physicians:  those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," namely those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians"). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted).  A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion.[4]  See id.  In general, the opinion of a treating physician is entitled to greater weight than that of a non-treating

---

[3] In the December 20, 2006 complete psychiatric evaluation report, Dr. Abejuela diagnosed plaintiff with Bipolar Disorder, NOS [not otherwise specified], and indicated that plaintiff (i) had moderate impairment in his daily activities, ability to maintain social functioning, and ability to understand, remember and carry out simple instructions; (ii) had moderate to severe impairment in concentration, persistence, and pace; (iii) had severe impairment in his ability to understand, carry out, and remember complex instructions; (iv) had severe impairment in his abilities to respond to co-workers, supervisors and the public; (v) had severe impairment in his abilities to respond appropriately to usual work situations, and to deal with changes in a routine work setting; and (vi) had experienced repeated episodes of emotional deterioration in work-like situations, a severe impairment. (AR 104, 106).

[4] Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from non-treating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

physician because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)). Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal quotations omitted). The ALJ can reject the opinion of a treating physician in favor of a conflicting opinion of another examining physician if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. Id. (citation and internal quotations omitted); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings) (citations and quotations omitted); Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite "magic words" to reject a treating physician opinion – court may draw specific and legitimate inferences from ALJ's opinion). "The ALJ must do more than offer his conclusions." Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988). "He must set forth his own interpretations and explain why they, rather than the [physician's], are correct." Id. "Broad and vague" reasons for rejecting the treating physician's opinion do not suffice. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). These standards also apply to opinions of examining physicians. See Carmickle v. Commissioner, Social Security Administration, 533 F.3d 1155, 1164 (9th Cir. 2008) (quoting Lester, 81 F.3d at 830-31); Andrews v. Shalala, 53 F.3d 1035, 1042-44 (9th Cir. 1995).

**2.     Analysis**

The ALJ rejected the very significant mental limitations stated in Dr. Abejuela's psychiatric evaluation for clear, convincing, specific and legitimate reasons supported by substantial evidence.

Here, a reasonable inference based on the ALJ's thorough discussion and evaluation of the record medical evidence, is that the ALJ found that the severe impairments as to which Dr. Abejuela opined were short lived, and thus not probative of any impairment that would satisfy the durational requirements applicable to social security disability cases.  See Thomas, 278 F.3d at 957; Magallanes, 881 F.2d at 751, 755.  As both the ALJ and the testifying medical expert noted, Dr. Abejuela examined plaintiff at a point in time (December 2006) that did not reflect plaintiff's true mental health condition throughout the relevant period of alleged disability.  When Dr. Abejuela conducted the evaluation, plaintiff had been in treatment for less than a month, was in the middle of an episode of decompensation, was using alcohol and drugs, and was not taking his psychotropic medications.  (AR 19).  The ALJ found that shortly after Dr. Abejuela's psychiatric evaluation, plaintiff's condition significantly improved:

> After beginning treatment again on November 24, 2006 the medical treatment records show continued improvement with only short periods of back sets that coincided with non compliance to treatment.  Overall, [plaintiff] did not have side effects to his medications and with continued treatment he did well (Exhibit 2F [AR 140-53], 6F [AR 140-53], 8F [AR 156-66], and 9F [AR 167-90]).

(AR 19).  The ALJ noted that plaintiff experienced positive results with "minimal and conservative treatment" when he took his prescribed medication and abstained from alcohol and drug use.  (AR 18).  The Court also notes that Dr. Abejuela's report specifically states that although plaintiff had been experiencing significant limitations at the time of the evaluation, "[plaintiff's] condition [was] expected to

get better in less than a year." (AR 107). The ALJ was not required to explain his decision to exclude from plaintiff's residual functional capacity determination such evidence that was not probative of disability that would have lasted for 12 months or longer. See Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (An ALJ must provide an explanation only when he rejects "significant probative evidence.") (citation omitted).

The ALJ properly rejected Dr. Abejuela's opinions in favor of the conflicting opinions of Dr. Glassmire, the testifying expert, which were consistent with the ALJ's residual functional capacity assessment.[5] (AR 198-203). As the ALJ noted, the medical expert's testimony was consistent with the state agency reviewing psychiatrist and physician – each of whom found no mental limitations beyond those already accounted for in the ALJ's residual functional capacity assessment. (AR 19, 124-39; 154-55). Accordingly, testimony from Dr. Glassmire constitutes substantial evidence supporting the ALJ's decision since it was consistent with all other evidence in the record. See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that opinions of nontreating or nonexamining doctors may serve as substantial evidence when consistent with independent clinical findings or other evidence in the record); Andrews, 53 F.3d at 1041 ("reports of the nonexamining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it"); Morgan, 169 F.3d at 600 (testifying medical expert opinions may serve as substantial evidence when "they are supported by other

---

[5]Dr. Glassmire testified to the following: Plaintiff had major depressive disorder and marijuana and alcohol abuse. (AR 199). Plaintiff's condition would cause mild limitations in activities of daily living, moderate limitations in social functioning, and moderate limitations in concentration, persistence and pace, and one episode of decompensation of extended duration. (AR 199-200). Plaintiff was limited to simple repetitive tasks with no public contact, could have only occasional non-intense contact with others, would be precluded from environments that require hypervigilance, and precluded from jobs that require safety operations. (AR 200). Plaintiff would not be expected to miss work so long as he worked within such noted limitations. (AR 200).

1 evidence in the record and are consistent with it"). Any conflict in the properly supported medical opinion evidence is the sole province of the ALJ to resolve. Andrews, 53 F.3d at 1041.

Accordingly, a remand or reversal is not warranted on this basis.

### B. The ALJ Properly Evaluated the Severity of Plaintiff's Impairments

#### 1. Pertinent Law

At step two of the sequential evaluation process, plaintiff has the burden to present evidence of medical signs, symptoms and laboratory findings[6] that establish a medically determinable physical or mental impairment that is severe, and that can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Ukolov v. Barnhart, 420 F.3d 1002, 1004-1005 (9th Cir. 2005) (citing 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D)); see 20 C.F.R. § 416.920. Substantial evidence supports an ALJ's determination that a claimant is not disabled at step two where "there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment." Id. (quoting SSR 96-4p, 1996 WL 374187, at *1-*2).

Step two is "a de minimis screening device [used] to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). Applying the

---

[6]A medical "sign" is "an anatomical, physiological, or psychological abnormality that can be shown by medically acceptable clinical and laboratory diagnostic techniques[.]" Ukolov, 420 F.3d at 1005 (quoting Social Security Ruling ("SSR") 96-4p, 1996 WL 374187, at *1 n.2). A "symptom" is "an individual's own perception or description of the impact of his or her physical or mental impairment(s)[.]" Id. (quoting SSR 96-4p, 1996 WL 374187, at *1 n.2); see also 20 C.F.R. §§ 416.928(a)-(b). "[U]nder no circumstances may the existence of an impairment be established on the basis of symptoms alone." Ukolov, 420 F.3d at 1005 (citation omitted); SSR 96-4p, 1996 WL 374187, at *1-2 ("[R]egardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings.").

9

normal standard of review to the requirements of step two, a court must determine whether an ALJ had substantial evidence to find that the medical evidence clearly established that the claimant did not have a medically severe impairment or combination of impairments. Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (citation omitted); see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here."). An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." Webb, 433 F.3d at 686 (citation omitted).

### 2. Analysis

Plaintiff contends that reversal or remand is warranted because the ALJ failed to find plaintiff's mental impairments severe at step two. (Plaintiff's Motion at 5). The Court disagrees.

Contrary to plaintiff's contention, at step two of the sequential evaluation process the ALJ expressly found that plaintiff suffered from two severe mental impairments – *i.e.* depression and marijuana abuse. (AR 14). To the extent plaintiff suggests that the ALJ erred by not finding other severe mental impairments based on the opinions expressed in Dr. Abejuela's psychiatric evaluation of plaintiff (*i.e.* bipolar disorder), such claim is without merit. As noted above, the ALJ properly rejected Dr. Abejuela's opinions for clear, convincing, specific and legitimate reasons supported by substantial evidence. Therefore, the ALJ did not err by declining to find additional severe mental impairments at step two.

Accordingly, a remand or reversal is not warranted on this basis.

///
///

### C. The ALJ Did Not Fail Properly to Consider Side Effects of Plaintiff's Medication

Plaintiff contends that the ALJ failed properly to consider limitations on plaintiff's residual functional capacity related to his use of prescription medication (*e.g.*, Seroquel, Celexa and Zyprexa). (Plaintiff's Motion at 5-7). The Court disagrees.

A claimant bears the burden of demonstrating that his use of medications caused a disabling impairment. See Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985) (claimant failed to meet burden of proving medication impaired his ability to work because he produced no clinical evidence). Here, the only evidence plaintiff points to in support of his contention are statements from his own disability report, and treatment records of increases in the dosage of plaintiff's medications, which plaintiff contends constitute episodes of decompensation. (Plaintiff's Motion at 5) (citing AR 94, 144, 181, 190). Apart from plaintiff's own passing statement that he experienced muscle spasms and sleepiness from Seroquel, and his unsupported speculation that increases in dosage of plaintiff's medication *could* be considered episodes of decompensation, plaintiff offers no objective evidence that his medication affected him in the way he claims, let alone that it interfered with his ability to work.[7] See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (ALJ did not err in failing to "explicitly address the drowsiness side-effect of [plaintiff's] medication" where the ALJ's residual functional capacity assessment accounted for "those limitations for which there was record support that did not depend on [plaintiff's] subjective complaints.");

---

[7] Most of plaintiff's treatment records either make no note of medication side effects, or indicate that plaintiff denied experiencing any side effects. (AR 110-23, 140-53, 145-90). The only mention of medication side effects in plaintiff's medical records appears to be plaintiff's own complaints of "muscle spasms" and "bright flashes of light" when taking Seroquel, but there is no evidence that he was unable to work due to such side effects. (AR 184). Moreover, the ALJ specifically found plaintiff's testimony lacking in credibility (AR 17), a finding that is not challenged by plaintiff in this proceeding.

11

Thomas, 278 F.3d at 960 (alleged side effects need not be considered where no objective evidence supported allegations); Osenbrock v. Apfel, 240 F.3d 1157, 1164 (9th Cir. 2001) (ALJ need not consider side effects that were not "severe enough to interfere with [plaintiff's] ability to work.").

Accordingly, plaintiff is not entitled to a reversal or remand on this basis.

### D. The ALJ Properly Considered Lay Witness Evidence

Plaintiff contends that the ALJ failed properly to consider statements provided by plaintiff's mother, Becky June Rogers, and failed to provide sufficient reasons for disregarding her statements. (Plaintiff's Motion at 7-9). This Court disagrees.

#### 1. Pertinent Facts

In a "Function Report – Adult – Third Party" form dated December 4, 2006, plaintiff's mother provided information about plaintiff's daily activities, personal care, meals, house and yard work, getting around, shopping, money handling, hobbies and interests, social activities, and information about his abilities. (AR 80-87). Plaintiff's mother stated that plaintiff: (i) watches T.V., spends "a lot of time on the computer" and plays his guitar; (ii) makes his own meal once a day, and helps with housework once in a while, but becomes angry when asked to do so; (iii) has no problem with personal care, and can manage his own money; (iv) does not like to go out much at all but can shop, walk, ride in a car, use public transportation, and go to church every week on his own; (v) gets very nervous and paranoid, has gotten angry over "nothing," knocked a hole in the wall, and "many times" has broken things (*i.e.* tables, guitars); (vi) has difficulty with memory, completing tasks, concentration, understanding, and getting along with others; (vii) does not finish what he starts, follows spoken instructions very well, but only when he wants to do what is asked of him; and (viii) "has problems getting along with anybody for long." (AR 80-87).

///

### 2. Pertinent Law

Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he expressly determines to disregard such testimony and gives reasons germane to each witness for doing so. Stout, 454 F.3d at 1056 (citations omitted); Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); see also Robbins, 466 F.3d at 885 (ALJ required to account for all lay witness testimony in discussion of findings) (citation omitted); Regennitter v. Commissioner of Social Security Administration, 166 F.3d 1294, 1298 (9th Cir. 1999) (testimony by lay witness who has observed claimant is important source of information about claimant's impairments); Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996) (lay witness testimony as to claimant's symptoms or how impairment affects ability to work is competent evidence and therefore cannot be disregarded without comment) (citations omitted); Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) (ALJ must consider observations of non-medical sources, *e.g.*, lay witnesses, as to how impairment affects claimant's ability to work). The standards discussed in these authorities appear equally applicable to written statements. Cf. Schneider v. Commissioner of Social Security Administration, 223 F.3d 968, 974-75 (9th Cir. 2000) (ALJ erred in failing to consider letters submitted by claimant's friends and ex-employers in evaluating severity of claimant's functional limitations).

In cases in which "the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Robbins, 466 F.3d at 885 (quoting Stout, 454 F.3d at 1055-56).

### 3. Analysis

First, although plaintiff contends that the ALJ failed to consider statements from plaintiff's mother that were favorable to plaintiff (Plaintiff's Motion at 7),

the record clearly shows otherwise.  More specifically, the ALJ's decision notes that plaintiff "got angry easily," "did not like going out alone," "had problems being around people" and "liked to isolate himself and was hard to be around" (AR 16-17) – particular statements plaintiff erroneously contends that the ALJ "totally ignored."

Second, to the extent the ALJ failed expressly to mention other statements from plaintiff's mother that simply corroborated limitations the ALJ already accounted for in his decision, any error was harmless.  See Zerba v. Commissioner of Social Security Administration, 279 Fed. Appx. 438, 440 (9th Cir. 2008) (failure to address husband's cumulative lay testimony harmless error); Rohrer v. Astrue, 279 Fed. Appx. 437, 437 (9th Cir. 2008) (rejecting claimant's contention that ALJ improperly rejected lay witness statement of claimant's girlfriend where such statement was cumulative of statements by claimant which ALJ accepted).[8]  Simply because the ALJ did not expressly reference cumulative symptom evidence does not mean he failed to consider such evidence.  See Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").  The ALJ was not required to discuss every piece of evidence in the record.  See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citations omitted).   Here, the ALJ discussed plaintiff's mother's statements at length and in great detail.  (AR 16-17). While the ALJ did not expressly mention the mother's statements that plaintiff's condition affects his ability to complete tasks, concentrate, remember things, and understand (AR 85), plaintiff fails to demonstrate that such alleged limitations impaired his ability to work beyond the ALJ's residual functional capacity assessment which limits plaintiff to doing "simple repetitive tasks" and "work in an environment with no hypervigilance."  (AR 15).  In light of the substance of the

---

[8]The Court may cite unpublished Ninth Circuit opinions issued on or after January 1, 2007.  See U.S. Ct. App. 9th Cir. Rule 36-3(b); Fed. R. App. P. 32.1(a).

mother's statements, plaintiff's own statements, and the medical evidence in the record, the Court can confidently conclude that no reasonable ALJ, even fully crediting those statements from plaintiff's mother which were not expressly addressed by the ALJ, could have reached a different disability determination.

Finally, the ALJ found the mother not credible because she was biased (*i.e.* she was supporting plaintiff and therefore "[had] a financial interest in seeing [plaintiff] receive benefits)"; her statements were "not supported by the clinical or diagnostic medical evidence;" and her statements regarding plaintiff's limitations were contrary to his daily activities. (AR 17). The ALJ may not discount her statements merely because, as plaintiff's mother, she is an interested party. See Regennitter, 166 F.3d at 1298. However, the ALJ properly rejected aspects of the mother's statements that were inconsistent with substantial other evidence – *i.e.*, "the clinical or diagnostic medical evidence." (AR 17); see Bayliss, 427 F.3d at 1218 (inconsistency with medical evidence is germane reason for discrediting the testimony of lay witness) (citing Lewis, 236 F.3d at 511); Vincent, 739 F.2d at 1394-95 (ALJ did not err by omitting from hearing decision discussion of "lay testimony that conflicted with the available medical evidence.") (citation omitted). The ALJ also properly discounted the mother's statements as to plaintiff's disabling limitations to the extent such statements were inconsistent with the lay witness' own description of plaintiff's daily activities. See, e.g., Brummer v. Astrue, 2010 WL 883864, at *2-3 (C.D. Cal. Mar. 9, 2010) (ALJ did not err in discounting lay witness testimony where witness's description of claimant's daily activities was inconsistent with disability). The ALJ noted:

> [Plaintiff] and [his] mother have described every day activities that include being able to drive a car, go out alone, use public transportation, shop, do light housekeeping, manage his own finances, play the guitar, work on the computer, and go to church. It appears that despite his impairment, [plaintiff] has engaged in a

somewhat normal level of daily activity and interaction. It should be
noted that the physical and mental capabilities requisite to performing
many of the tasks described above as well as the social interactions
replicate those necessary for obtaining and maintaining employment.
(AR 17).

Accordingly, a remand or reversal on this basis is not warranted.

### E. The ALJ Posed a Complete Hypothetical Question to the Vocational Expert

Plaintiff contends that a reversal or remand is appropriate because the ALJ erroneously omitted from his hypothetical question posed to the vocational expert evidence of the "multiple moderate and severe mental impairments and limitations" contained in Dr. Abejuela's opinions. (Plaintiff's Motion at 9-10). The Court disagrees.

A hypothetical question posed by an ALJ to a vocational expert must set out all the limitations and restrictions of the particular claimant. Light v. Social Security Administration, 119 F.3d 789, 793 (9th Cir. 1997) (citing Andrews, 53 F.3d at 1044); Embrey, 849 F.2d at 422 ("Hypothetical questions posed to the vocational expert must set out *all* the limitations and restrictions of the particular claimant . . . .") (emphasis in original; citation omitted). However, an ALJ's hypothetical question need not include limitations not supported by substantial evidence in the record. Osenbrock, 240 F.3d at 1163-64 (citation omitted).

As discussed above, the ALJ properly rejected Dr. Abejuela's opinions as immaterial because they failed to satisfy the durational requirement and were otherwise inconsistent with the overall medical record. Accordingly, the ALJ properly omitted such evidence from the hypothetical questions posed to the vocational expert.

A remand or reversal on this basis is not warranted.

///

## V. CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: September 21, 2010

                                                /s/
                                    Honorable Jacqueline Chooljian
                                    UNITED STATES MAGISTRATE JUDGE